UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEN HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 4402 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| BOVIS LEND LEASE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>Memorandum Opinion and Order</u>

Plaintiff Ken Henderson was injured while working as an employee of USA Hoist, a

subcontractor on the Trump Tower construction project in Chicago, Illinois. He brought this

diversity action against Defendant Bovis Lend Lease, Inc., the construction manager, alleging

that Bovis breached its duties under § 414 of the Restatement (Second) of Torts, which provides

a basis under Illinois law for imposing liability on a construction manager or general contractor

for injuries caused directly by a subcontractor's negligence. Bovis has moved for summary

judgment, arguing that it cannot be held liable under § 414 because it did not "entrust" work to

USA Hoist within the meaning of that provision. The motion is granted.

## Background

Henderson did not submit a Local Rule 56.1(b)(3)(B) response to Bovis's Local Rule

56.1(a)(3) statement of material facts. Henderson's opposition brief does include a one-page

section entitled "Plaintiff Response to Bovis Statement of Material Uncontested Facts." Doc. 75

at 4. That section violates Local Rule 56.1(b)(3) in two ways. First, it does not set forth in a

separate document—meaning separate from Henderson's opposition brief—his response to

Bovis's factual assertions.  *See* N.D. Ill. Local Rule 56.1(b)(2)-(3) (requiring the non-movant to file "(2) a supporting memorandum of law; *and* (3) a concise response to the movant's statement [of material facts]") (emphasis added).  Second, and more importantly, the section does not identify the facts to which it is responding, and the section's numbered paragraphs do not synch up with the paragraphs in Bovis's statement.  *See* N.D. Ill. Local Rule 56.1(b)(3)(A)-(B) (requiring the non-movant's "concise response to the movant's statement … [to] contain: (A) numbered paragraphs, *each corresponding to and stating a concise summary of the paragraph to which it is directed*, and (B) a response to each numbered paragraph in the moving party's statement") (emphasis added).

Because Henderson failed to submit a Local Rule 56.1(b)(3)(B) response, the facts asserted in Bovis's Local Rule 56.1(a)(3) statement are accepted as true to the extent they are supported by the record, though the facts will be viewed in the light most favorable to Henderson and all inferences will be drawn in his favor.  *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Moriningstar, Inc.*, __ F.3d __, 2012 WL 130456, at *1, *5 (7th Cir. Jan. 13, 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003).  It bears mention that the "Plaintiff Response to Bovis Statement of Material Uncontested Facts" section in Henderson's brief does not actually deny any facts.  Of the thirteen

(unidentified) facts to which he responds, Henderson agrees with seven facts, says with respect to five facts that Bovis's contract with the construction project's owner "speaks for itself," and says with respect to one fact that the complaint "speaks for itself." Doc. 75 at 4. Saying that a document "speaks for itself" is not a denial under Local Rule 56.1(b)(3)(B). *See Ill. Bell Tel. Co. v. Global NAPS Ill., Inc.*, 749 F. Supp. 2d 819, 822 n.6 (N.D. Ill. 2010); *Laborers' Pension Fund v. Eagle Am. Corp.*, 2009 WL 4545202, at *3 (N.D. Ill. Dec. 1, 2009); *Harper v. Reliance Standard Life Ins. Co.*, 2008 WL 2003175, at *1 n.1 (N.D. Ill. May 8, 2008); *Houlihan v. McCourt*, 2002 WL 1759822, at *1 n.1 (N.D. Ill. July 29, 2002).

Henderson also failed to submit a Local Rule 56.1(b)(3)(C) statement of additional material facts. Given Henderson's failure to submit either a Local Rule 56.1(b)(3)(B) response or a Local Rule 56.1(b)(3)(C) statement, the factual assertions in his opposition brief (Doc. 75 at 2-5) will be disregarded. *See Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (holding that the predecessor to Local Rule 56.1(b)(3) "provides the only acceptable means of … presenting additional facts to the district court"); *Garner v. Lakeside Cmty. Comm.*, 2011 WL 2415754, at *1 n.1 (N.D. Ill. June 13, 2011) ("the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)[] statement of additional facts"); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material"). The court notes for good measure that the factual assertions in Henderson's brief, even if considered, would not change the disposition of Bovis's motion.

401 North Wabash Venture, LLC, was the owner of the Trump Tower construction project.  Doc. 56 at ¶ 9.  401 hired Bovis to be the construction manager.  *Id*. at ¶¶ 2, 12.  Bovis and 401 entered into a Construction Management Agreement, which provided: "[Bovis] is hereby appointed as [401's] Agent and shall at [401's] direction execute all Trade Contracts and other required agreements or documents in that capacity."  *Id*. at ¶ 13.  The Agreement said that Bovis was responsible for soliciting bids from trade contractors and for assisting 401 with its analysis of the bids.  *Id*. at ¶ 14.  Still, the Agreement provided that "[a]ward of each trade contract shall be made by [401], with the consultation and cooperation of [Bovis]," thus specifically reserving 401's right to make the final decision on the selection of trade contractors.  *Id*. at ¶¶ 15-16.  Consistent with the Agreement, 401 "made all final decisions as to which trade contractors were ultimately hired to do the construction work at the project."  *Id*. at ¶ 16; Doc. 56-4 at ¶ 10.  Pertinent to this case, 401 "ultimately decided to retain USA Hoist to do the personnel hoist work at the project."  Doc. 56 at ¶ 17; *see also* Doc. 56-4 at ¶ 11.  Bovis did not enter into a trade contract with USA Hoist; Bovis did sign 401's trade contract with USA Hoist, but "solely in Bovis's capacity as 401's agent."  Doc. 56 at ¶¶ 18-19.

USA Hoist employed Henderson as an ironworker.  *Id*. at ¶ 1.  Henderson alleges that he was injured on July 2, 2008, while attempting to manually lift steel through a floor opening.  Doc. 1 at p. 5; Doc. 56 at ¶ 1.  He claims in this suit that Bovis breached its "duty to exercise reasonable care in the erection, construction, placement, or operation of said construction site including the provision of a safe, suitable and proper hoist or lifting device for [Henderson]."  Doc. 1 at pp. 4-5.  After discovery closed, Bovis moved for summary judgment.

**Discussion**

Because a general contractor or construction manager "usually is not in a good position to assure that [its] subcontractors exercise due care, since [it] does not hire, fire, train, or supervise their employees," it "ordinarily is not liable to someone injured by the negligence of a subcontractor." *Aguirre v. Turner Constr. Co.*, 582 F.3d 808, 810 (7th Cir. 2009) ("*Aguirre II*"); *see also Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 938-39 (7th Cir. 1986). Section 414 of the Restatement (Second) Torts carves an exception to this general rule where the general contractor or construction manager entrusts work to a subcontractor, exercises the requisite level of control over the work, and fails to exercise that control with reasonable care. *See Aguirre II*, 582 F.3d at 810; *Aguirre v. Turner Constr. Co.*, 501 F.3d 825, 829-30 (7th Cir. 2007) ("*Aguirre I*"). The provision reads:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) Torts § 414 (1965). Illinois has adopted Section 414. *See Aguirre I*, 501 F.3d at 828 (citing *Larson v. Commonwealth Edison Co.*, 211 N.E.2d 247 (Ill. 1965)).[*]

---

[*] The defendants in some § 414 cases are general contractors, while in others they are construction managers or project managers. *See, e.g.*, *Aguirre I*, 501 F.3d at 826 (general contractor); *Wilfong v. L.J. Dodd Constr.*, 930 N.E.2d 511, 516 (Ill. App. 2010) (project manager and general contractor); *Madden v. Paschen*, 916 N.E.2d 1203, 1206 (Ill. App. 2009) (construction manager). Although there are certain differences among general contractors, construction managers, and project managers, none are pertinent to the § 414 analysis in this case. Accordingly, in discussing § 414 liability, this opinion will refer interchangeably to general contractors and construction managers. *See Wilfong*, 930 N.E.2d at 526-27 (referring to the liability of a "general contractor" where the defendant was a "project manager").

Section 414 must be interpreted "in accordance with its plain language and accompanying commentary." *Aguirre I*, 501 F.3d at 828. By its plain terms, § 414 liability arises only if two conditions are satisfied: (1) the defendant "entrusts work to an independent contractor"; and (2) the defendant "retains the control of any part of the work." Restatement (Second) Torts § 414. Most Illinois decisions concerning § 414 turn exclusively on the "control" requirement. *See O'Connell v. Turner Constr. Co.*, 949 N.E.2d 1105, 1108 (Ill. App. 2011) (citing cases). The Appellate Court of Illinois has made clear, however, that "entrustment" is a separate and equally important component of § 414 liability. *See ibid.* ("the prerequisite for applying this section is entrustment of work to an independent contractor by the defendant, absent which section 414 is inapplicable and the issue of control … is never reached"); *Madden v. Paschen*, 916 N.E.2d 1203, 1219 (Ill. App. 2009) ("In this case, defendants may not be found vicariously liable under section 414 because neither of them qualify as '[o]ne who entrusts work to an independent contractor' (Restatement (Second) of Torts § 414, at 387 (1965)), which is a necessary precondition to being vicariously liable under this section for the tortious acts of that independent contractor."). Because the Supreme Court of Illinois has not directly addressed the entrustment issue, a federal court may deviate from these intermediate appellate court decisions only if "there are persuasive indications that the [state supreme court] would decide the [issue] differently." *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003) (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002)). No such indications are apparent. In fact, Henderson acknowledged at oral argument on Bovis's motion that entrustment is a separate and independent prerequisite to § 414 liability.

The meaning of the entrustment requirement presents a more difficult matter. *O'Connell* holds that entrustment is present only where the construction manager "actually selected the contractors or subcontractors" whose actions directly caused the injury. 949 N.E.2d at 1108. Bovis argues that it cannot be held to have "actually selected" USA Hoist because it did not have ultimate hiring authority—meaning that it did not enter into the trade contract with USA Hoist and that the Construction Management Agreement did not give it final say over USA Hoist's selection. Doc. 55 at 5. That narrow view of the entrustment requirement is open to serious question. As an initial matter, it makes little practical sense. If the lack of formal contractual hiring authority, standing alone, precluded a finding of entrustment, then a general contractor could evade § 414 liability by ensuring that its agreement with the project owner left such authority with the project owner. And if the project owner ensured that the agreement left final authority to control the work site with the general contractor, then § 414 would be negated in large part, if not entirely—the entrustment requirement would be satisfied with respect to the project owner but not the general contractor, while the control requirement would be satisfied with respect to the general contractor but not the project owner. It is doubtful that the Illinois courts would countenance such a facile evasion of the protections provided and policies implemented by § 414.

Allowing general contractors to skirt the entrustment requirement in this manner, moreover, would be inconsistent with the Illinois courts' understanding of the control requirement. In deciding whether control has been shown, "Illinois courts ask whether the principal … *actually engaged* in detailed supervision and/or control of subcontractors' methods and means of performing work." *Aguirre I*, 501 F.3d at 830 (emphasis added). Applying this

principle, the cases hold that evidence of a general contractor's actual control over the work satisfies the control requirement even if the trade contract formally assigns complete control to the subcontractor. *See id.* at 831 ("extensive precautions taken by [the general contractor] … evince the same level of control over the details of [the independent contractor's] work, regardless of the contractual language to the contrary"); *Wilkerson v. Paul H. Schwendener, Inc.*, 884 N.E.2d 208, 213-14 (Ill. App. 2008) ("Although the contract between [the subcontractor] and defendant [general contractor] seemingly left to [the subcontractor] control of the operative details of its work and the safety of its employees, defendant's actions on the jobsite show defendant retained more than a general right of supervision."). There is no apparent reason why Illinois would adopt a different, more formalistic approach to the entrustment requirement.

There is no need to accept or reject Bovis's narrow view of the entrustment requirement, however, because Henderson's attempt to show entrustment would fail even if Bovis's narrow view were rejected. The record is sparse. On the key question of whether Bovis "actually selected" USA Hoist as a subcontractor, Henderson can point only to the Construction Management Agreement. Bovis's uncontroverted Local Rule 56.1(a)(3) statement says that the Agreement made Bovis "responsible for soliciting bids from trade contractors, and for assisting 401 with its analysis of the bids." Doc. 56 at ¶ 14. The Agreement itself provides that Bovis "shall," among other things, "prepare lists of potential bidders and vendors and develop their interest in the Project"; "provide recommendations on bidder qualifications to [401] for their review and comment"; "organize bid packages and prepare trade requisitions and other bid documents"; "prepare and distribute to prospective pre-qualified bidders all invitations to bid and all bid packages"; receive the bids "on or before the deadline"; "analyze [the bids] and submit to

[401] a comparison sheet showing … [Bovis's] written recommendation;" "consult with [401] with respect to the bids and shall assist [401] in analyzing the bids"; and "ensure that sub-subcontractors, material suppliers and proposed substitutions are acceptable to [401]."  Doc. 56-6 at 9-12.  The Agreement does not give Bovis the final say in selecting subcontractors, and the record says absolutely nothing about what Bovis *actually* did—in the real world, on the ground—in connection with USA Hoist's retention, other than signing the trade contract in its capacity as 401's agent.

Given the limited record, Henderson can survive summary judgment only if a § 414 plaintiff can establish entrustment *solely* by pointing to contractual provisions making the construction manager responsible for soliciting bids from independent contractors and for assisting the project owner with analyzing the bids.  *O'Connell* makes clear that evidence of such contractual provisions, without more, is insufficient to show entrustment.  In *O'Connell*, a worker injured at a construction site sued Turner, the construction manager, on a § 414 theory. 949 N.E.2d at 1106.  The contract between the project owner and Turner provided that Turner "shall receive bids, prepare bid analyses and make recommendations to the Owner for Owner's award of Contracts or rejection of bids" and "shall assist the Owner in preparing Construction Contracts and advise the Owner in the acceptability of Subcontractors and material suppliers proposed by Contractors."  *Ibid*.  Moreover, the evidence reflected that "Turner crafted a procedure wherein all contracts were drafted by it, and Turner handled the bidding process for hiring subcontracts."  *Id*. at 1108.  On that record, the state appellate court rejected the worker's submission that entrustment was shown: "While Turner may have aided the [the project owner] in drafting contracts or handling construction bids, unless Turner actually selected the contractors

or subcontractors, … it cannot be said that *Turner* entrusted [the subcontractors] with the work, absent which section 414 is inapplicable." *Ibid*.

The record here pertaining to entrustment is weaker than the record in *O'Connell*. The contract between Bovis and 401 appears comparable to the contract between Turner and the project owner in *O'Connell*—both provide that the construction manager will assist in the selection of subcontractors, and both leave ultimate authority over subcontractor hiring with the project owner. And here, unlike in *O'Connell*, there is *no* evidence of what Bovis actually did to aid 401 in drafting contracts or handle construction bids. If entrustment cannot be established by the contract in *O'Connell* plus evidence that Turner actually aided the project owner in drafting contracts and handling bids, then the same result holds, *a fortiori*, where the evidence consists solely the Bovis-401 contract.

Henderson cites *Sojka v. Bovis Lend Lease, Inc.*, 2011 WL 2116435 (N.D. Ill. May 27, 2011), to support its view that Bovis entrusted work to USA Hoist. *Sojka* was a § 414 suit against Bovis by a worker injured at the Trump Tower project. The court granted summary judgment to Bovis on the ground that it did not breach its duty of care; before reaching that result, however, the court held that the plaintiff had succeeded in showing that Bovis entrusted work to the subcontractor that directly caused his injury. *Id*. at *6-8. The plaintiff's appeal of the judgment remains pending. *Sojka v. Bovis Lend Lease, Inc.*, No. 11-2747 (7th Cir.).

The *Sojka* court's entrustment analysis—which is dicta because it could have been eliminated without altering the judgment, *see Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 684 (7th Cir. 2007)—distinguished *O'Connell* on two grounds. The court first noted that the project owner in *O'Connell* hired a contractor who in turn hired the injured worker's employer,

while in *Sojka* the project owner itself hired the injured worker's employer. *Id*. at *6. That distinction is immaterial; what matters under Illinois law is whether the general contractor actually selected the subcontractor, not the number of layers between the project owner and the subcontractor. Second, the *Sojka* court noted that "Bovis's contract with the owner was much broader in scope and gave Bovis significant authority to act as the owner's agent." *Ibid*. That distinction is immaterial as well; whether the contract required Bovis to act as 401's agent cannot, by itself, show entrustment.

In sum, *O'Connell* cannot be meaningfully distinguished from this case. And because there is no decision of the Appellate Court of Illinois or Supreme Court of Illinois that takes a different view of the entrustment requirement, *O'Connell* will be followed. *See Commonwealth Ins. Co.*, 323 F.3d at 509.

## Conclusion

For the foregoing reasons, Bovis's motion for summary judgment is granted. Judgment is entered in favor of Bovis and against Henderson. In light of this disposition, Bovis' motion to strike Henderson's improper submission of facts is denied as moot.

January 27, 2012

_____

United States District Judge

-11-